UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAMAL SNEED, Plaintiff, v. NEVADA DEPARTMENT OF CORRECTIONS, *et al.*, Defendants. | Case No. 3:25-cv-00624-MMD-CSD<br>SCREENING ORDER |

## I. SUMMARY

*Pro se* Plaintiff Jamal Sneed, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at Northern Nevada Correctional Center ("NNCC"), submitted a civil rights complaint (ECF No. 1-1 ("Complaint")) under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis*. (ECF No. 4.) The Court finds good cause exists to grant Plaintiff's *in forma pauperis* application and screens the Complaint under 28 U.S.C. § 1915A.

## II. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id*.

///

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III. SCREENING OF COMPLAINT**

Sneed sues Defendants the NDOC,[1] NDOC Director James Dzurenda, and the following NNCC staff: Warden John Henley, Associate Warden of Programs Mr. Hartman, and law library supervisor Mrs. Vine for events that occurred at NNCC. (ECF No. 1-1 at 2.) He brings three claims and seeks monetary damages. (*Id*. at 2-6.)

**A. Factual Allegations**

Sneed alleges the following. On October 16, 2025, Vine delivered to him a screening order for another case he filed in this Court—3:25-cv-00071-ART-CSD. (*Id*. at 3.) The screening order was dated September 16, 2025. (*Id.*) That screening order gave Sneed leave to file an amended complaint by October 16, 2025. (*Id.*) Sneed was then

---

[1]There are no allegations against the NDOC in the Complaint. In any event, NDOC is subject to dismissal from this action with prejudice because the NDOC is an arm of the State of Nevada and is not a "person" for purposes of § 1983. *See Doe v. Lawrence Livermore Nat. Lab*., 131 F. 3d 836, 539 (9th Cir. 1997).

unable to file an amended complaint by the deadline. This "most definitely led to a strike against [Sneed]" under the PLRA. (*Id*.) Sneed reported the incident to Hartman on a DOC 3012 form but Hartman has failed to remedy the wrong. (*Id*.)

For almost a year from December 27, 2024 to October 26, 2025, there were many days that no law library clerk came to Unit 2, where Sneed was housed. (*Id.* at 4.) Vine is responsible for arranging for the clerks to go to Unit 2 and to hand out court documents. (*Id.*) Sneed submitted an emergency grievance. (*Id.*) Lt. Tolotti responded that this was not an emergency and instructed him to file the proper grievance at the informal level. (*Id.*) Sneed submitted a DOC 3012 to inform Hartman and Henley of the situation. (*Id.*)

From March until September 2025, Sneed was placed on suicide watch and had no access to his legal paperwork. (*Id.* at 5.) He submitted numerous DOC 3012 forms to Hartman stating that he had no access to the courts. (*Id.*) He was told that while on suicide watch he was not permitted to access his property. (*Id.*) A case worker told him that when he got off suicide watch he'd be able to do his legal work. (*Id.*) Henley and Dzurenda were aware of the situation via the DOC 3012 forms and failed to remedy the situation. (*Id.*)

Based on these allegations, Sneed brings three claims alleging violations of his First and Fourteenth Amendment rights to access to the courts.

**B. Legal Standard: Access to the Courts**

Under the First and Fourteenth Amendments, prisoners have a constitutional right to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id*. at 356-57.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See id*. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id*. at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id*. at 353 n.3, 354-55.

**C. Analysis**

**1. Claim 1**

Sneed fails to state a claim that Defendants interfered with his access to the Court in Case No. 3:25-cv-00071, causing actual injury. He alleges that Vine did not give him the Court's September 16, 2025 screening order until October 16, 2025. He says he was therefore unable to file an amended complaint by the deadline set in the screening order, leading to a strike under the PLRA. The Court takes judicial notice of the docket in the disputed case. Sneed is correct that in Case No. 3:25-cv-00071 the Court entered a screening order on September 16, 2025 that dismissed his complaint with leave to file an amended complaint by October 16, 2025. *See Sneed v. Kerry*, Case No. 3:25-cv-00071, (D. Nev. Sept. 16, 2025), (ECF No. 5.) On October 20, 2025, Sneed filed a motion for extension of time to file an amended complaint. *See id*. at ECF No. 8. The Court granted the motion and gave Sneed until November 21, 2025 to file an amended complaint. *See id*. at ECF No. 10. Sneed filed a first amended complaint on October 24 and filed a second amended complaint on November 12. *See id*. at ECF Nos. 11, 12. The Court entered a screening order for the second amended complaint on August 21, 2026. *See id*. at ECF No. 15. The order concluded that Sneed stated colorable claims regarding medical care, directed service of the complaint on the defendants, and set a schedule for defendants to respond to the complaint. *See id.*

Contrary to Sneed's allegations here—and even assuming that there was an unexplained delay in his receipt of the screening order—he was not prevented from filing an amended complaint in Case No. 3:25-cv-00071. The case is currently proceeding on the normal litigation track. His claim that any Defendants interfered with his ability to litigate the case, causing actual injury, is belied by the record. The Court, therefore, denies Claim 1 with prejudice and without leave to amend, as amendment would be futile.

**2. Claim 2**

Sneed alleges that from December 27, 2024 to October 26, 2025, there were "many days throughout the weeks, months, and year" that no law library clerk came to his unit. (ECF No. 1-1 at 4.) He alleges that he did not have "sufficient access to the courts" during that time period. (*Id*.)

Sneed again fails to state a claim that Defendants interfered with his access to the court. First, he doesn't allege any actual injury. Moreover, the Court takes judicial notice of the following six civil rights cases that Sneed litigated during the relevant time.

Sneed filed Case No. 3:25-cv-00009-MMD-CLB on January 6, 2025. On February 11, 2025, Sneed filed Case No. 3:25-cv-00081-ART-CSD. The parties settled the two cases in a global mediation on December 30, 2025. *See Sneed v. NDOC*, Case No. 3:25-cv-00009- MMD-CLB, (ECF Nos. 12, 14, 15).

Sneed filed Case No. 3:25-cv-00069-MMD-CLB on February 4, 2025. On March 25, 2026, the Court screened the complaint and found that he stated a colorable claim related to outdoor exercise. *See Sneed v. NDOC*, Case No. 3:25-cv-00069-MMD-CLB (D. Nev. Mar. 25, 2026), (ECF No. 13.) On April 8, 2026, Sneed voluntarily dismissed the case without prejudice. *See id*. at ECF Nos. 14, 15.

Sneed filed the case that is the subject of Claim 1—Case No. 3:25-cv-00071—on February 5, 2025. As the Court described above that case is ongoing. *See Sneed v. Kerry*, Case No. 3:25-cv-00071-ART-CSD, (D. Nev. Aug. 21, 2026), (ECF No. 15.)

///

///

On October 16, 2025, Sneed filed Case No: 3:25-cv-00583-MMD-CLB. That case was dismissed with prejudice on August 19, 2026. *See Sneed v. NDOC*, Case No. 3:25-cv-00583-MMD-CKB (D. Nev. Aug. 19, 2026), (ECF No. 5).

He filed Case No. 3:25-cv-00605-ART-CLB on October 24, 2025. The Court screened that case on August 14, 2026, and directed service of the complaint on the defendants. *See Sneed v. NDOC*, Case No. 3:25-cv-00605-ART-CLB (D. Nev. Aug. 14, 2026), (ECF No. 5.)

Claim 2 is utterly belied by the record. The Court dismisses Claim 2 with prejudice and without leave to amend as amendment would be futile.

**3. Claim 3**

Sneed alleges that he was denied access to his legal paperwork while on suicide watch from March 12, 2025 until September 17, 2025. He filed a DOC 3012 and the response was "[due to] your current classification you are unable to have access to your property." (ECF No. 1-1 at 5.) He was "coerced off suicide watch" because a case worker told him "well, get off suicide watch and you can do your legal work." (*Id*.) Hartman, Henley, and Dzurenda were aware of the situation via the DOC 3012 and took no action.

First, suicide watch implicates critical safety and security concerns both for a suicidal inmate and the other inmates and prison personnel. In *Anderson v. County of Kern*, the Ninth Circuit recognized that "prison officials are not culpable when they put an inmate who imminently threatens or attempts suicide temporarily in a place where he cannot hurt himself." 45 F.3d 1310, 1315 (9th Cir. 1995). Prison officials may use safety cells with inmates who are a danger to themselves as a way to deprive those inmates "of all means of harming themselves." *Id*. at 1314. Notably, writing instruments could be used for self-harm.[2]

///

[2]*See, e.g.*, *Sneed v. NDOC*, Case No. 3:24-cv-00569-MMD-CSD, (D. Nev. May 2025), (ECF No. 13 at 2) (Sneed moved to voluntarily dismiss the complaint and explained to the Court that he was in suicide watch and was not allowed to have a pen in his cell. The Sergeant took him out of his cell and gave him a pen and paper "on the counter in front of my cell to write this motion/notice.").

And, again, Sneed again does not allege that he was prevented from accessing the courts and suffered actual injury. From March to September 2025, Sneed either actively litigated several civil rights cases in this Court or ongoing civil rights litigation proceeded while he was in suicide watch, with no prejudice to him. *See, e.g.*, Sneed v. NDOC, Case No. 3:25-cv-00605-ART-CLB (D. Nev. Aug. 14, 2026), (ECF No. 5); *Sneed v. Kerry*, Case No. 3:25-cv-00071-ART-CSD, (D. Nev. Aug. 21, 2026), (ECF No. 15.)

Accordingly, Claim 3 is also belied by the record. The Court dismisses Claim 3 with prejudice and without leave to amend as amendment would be futile.

The Complaint, therefore, is dismissed in its entirety with prejudice and without leave to amend.

## IV. CONCLUSION

It is therefore ordered that the Clerk of Court electronically file the Complaint (ECF No. 1-1).

It is further ordered that the Complaint is dismissed with prejudice for failure to state a claim and without leave to amend.

It is further ordered that Sneed's application to proceed *in forma pauperis* (ECF No. 4) is granted. Plaintiff will not be required to pay an initial installment fee. Nevertheless, the full filing fee will still be due under 28 U.S.C. § 1915, even though this action is dismissed is otherwise unsuccessful. The NDOC will forward payments from the account of Jamal Sneed, #1058430 to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. The Clerk of the Court will send a copy of this order to the Finance Division of the Clerk's Office. The Clerk will also send a copy of this order to the Chief of Inmate Services for the Nevada Department of Corrections at formapauperis@doc.nv.gov.

///

///

///

It is further ordered that the Clerk of the Court close the case and enter judgment accordingly.

It is further ordered that the Court certifies that any *in forma pauperis* appeal from this order would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3).

DATED THIS 8th Day of October 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE